IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL D. MAYO, ) | | |
| individually and on behalf of all those ) | | |
| similarly situated, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. 08-00568-CV-W-DGK | |
| ) | | |
| USB REAL ESTATE SECURITIES, INC. ) | | |
| and DEUTSCHE BANK NATIONAL TRUST ) | | |
| COMPANY (in its capacity as trustee of ) | | |
| the MASTR SPECIALIZED LOAN ) | | |
| TRUST 2007-01), ) | | |
| ) | | |
| Defendants. ) | | |

## ORDER REGARDING CLASS CERTIFICATION

This case is a putative class action brought under the Missouri Second Mortgage Loan Act ("MSMLA"). Plaintiff Michael Mayo alleges he was charged illegal fees at closing in connection with his residential second mortgage loan. He is suing two entities who acquired and received interest on his loan after closing.[1]

Before the Court is Plaintiff's Motion for Class Certification (doc. 169). The Court finds that the requirements for class certification here are largely met, however the proposed class definition is overbroad, and it is unclear whether an appropriately defined class will be sufficiently numerous to make joinder of all members impracticable. The Court issues a partial decision now and ORDERS

---

[1] The Court previously held in its Summary Judgment Order (doc. 243) that Plaintiff's wife, Sharron Mayo, lacked standing to sue, and that the loan servicers Plaintiff had sued, GMAC Mortgage, LLC and Residential Funding Company, LLC did not violate the MSMLA and were entitled to summary judgment. Accordingly, these parties are no longer part of this lawsuit. The Court found that Defendants UBS Real Estate Securities, Inc. and Deutsche Bank National Trust Company (as Trustee of the MASTR Specialized Loan Trust 2007-01) were potentially liable for violating the MSMLA.

1

the parties to submit additional briefing concerning an amended proposed class definition and numerousity.

**Background**

The merits of this lawsuit have been partially determined. On January 13, 2011, the Court issued its Order (doc. 243) granting Defendants partial summary judgment. This summary is drawn from that order.

In October of 2005 Option One Mortgage Corporation loaned Plaintiff Michael Mayo $25,800 on a "piggyback" second mortgage loan ("the Loan") which Mayo used to purchase his home. The loan was to be repaid with interest at the yearly rate of 11.65% in monthly installments over thirty years. At closing Mayo paid two fees, a funding fee and an underwriting fee, to Option One. The Court ruled charging these fees violated § 408.231.1 of the MSMLA.[2]

In September of 2006 Option One sold the Loan to Defendant UBS Real Estate Securities, Inc. ("USB"). The Loan was sold in a pool of 135 loans. UBS contends it subjected all the loans it purchased to a thorough due diligence process to determine their legality. The parties dispute the mechanics of how this due diligence process worked, its adequacy, and whether UBS undertook this process in good faith.

In March of 2007 UBS sold the Loan to Mortgage Asset Securitization Transactions, Inc., which in turn deposited the Loan into a trust designated as "MASTR Specialized Loan Trust 2007-01." The trustee of the MASTR Trust is Defendant Deutsche Bank National Trust Company. The MASTR Trust received interest and payments on the Loan, and then dispersed these payments to the Trust's shareholders.

---

[2] Mayo also paid a pre-paid interest fee and four fees which the Court found were bona fide closing costs paid to third-parties. These fees did not violate the MSMLA.

## Standard Governing Class Certification

Rule 23 governs class certification. A party seeking class certification must satisfy all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). The decision whether or not to certify a class is not a reflection of the merits of the case. *Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006).

Under Rule 23(a) class certification is appropriate when "(1) the class is so numerous that joinder of all members is impracticable…(2) there are questions of law or fact common to the class…(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The requirements are typically summarized as numerosity, commonality, typicality and adequacy. *In re Constar Int'l Inc. Sec. Litig.,* 585 F.3d 774, 780 (3d Cir. 2009). District courts must engage in a "rigorous analysis" in determining whether the 23(a) factors are satisfied. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982).

Under Rule 23(b) a party seeking class certification must also show that,

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as

> a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

A finding under part (3) may be based on,

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Rule 23(b)(3). In addition to these explicit requirements, Rule 23 implicitly requires that a class exist, that the proposed representative be a member of the class, and that the proposed class be "ascertainable or identifiable" and "administratively manageable." *Dumas v. Albers Med., Inc.,* No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *5, n.7 (W.D. Mo. Sept. 7, 2005); *see also In re Paxil Litig.,* 212 F.R.D. 539, 546 (C.D. Calif. 2003) (holding that certification not appropriate where proposed representatives "have not met their burden of defining proper classes" due to an inability of class members to be determined until late in the litigation).

The party seeking class certification bears the burden of showing that all of the requirements of class certification have been met. *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 246 (W.D. Ark. 2010).

## Discussion

**A.     The proposed class is overbroad.**

Plaintiff proposes the class be defined as,

> All persons who obtained a second mortgage loan secured by residential real estate located in Missouri that was purchased by and/or assigned to Defendant UBS Real Estate Securities, Inc. and either: (i) the loan was obtained on or after June 20, 2002; and/or (ii) interest was paid on the loan on or after June 20, 2002.

This definition is overbroad. The MSMLA provides a cause of action only for those who were charged closing costs that violate Mo. Rev. Stat. § 408.231.1, but Plaintiff has defined the proposed class without any reference to closing costs. Plaintiff also proposes to include in the class all persons who merely paid interest on such a loan after June 20, 2002, even if the loan was originated well before this date, thus attempting to include loans which would be barred by what Plaintiff suggests is the applicable statute of limitations.[3] While there is persuasive authority suggesting that the court may deny certification simply because the proposed class definition is improper, *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), the Court notes that if the other Rule 23 requirements are met, an amended class definition could also be presented. *See Canady v. Allstate Ins. Co.*, No. 96CV0174, 1997 WL 33384270, at *3 (W.D. Mo. June 19, 1997).

To assist the Court in determining if some realistic, practicable class definition could be formed, the Court orders the parties to submit additional briefing on a amended proposed class definition. Plaintiff's brief should include an amended proposed class definition and argument

---

[3] Defendants do not agree with Plaintiff's suggestion that the applicable limitations period is six years, but argue if this period were six years, no claims could be brought for loans originated before June 20, 2002. Defendants note the limitations period on a cause of action begins to run when the right to file suit accrues, that is, when the damage becomes ascertainable. *See, e.g.*, *Bonney v. Envtl. Eng'g, Inc.*, 224 S.W.3d 109, 116 (Mo. App. 2007). They argue that any injury under § 408.231.1 is ascertainable from reviewing the settlement charges, thus the limitations period begins to run at settlement, and it is irrelevant when the interest was collected. Plaintiff does not deny or address this in his response, and so the Court treats this argument as conceded.

5

explaining why this definition is appropriate. The amended class definition should encompass, at most, persons who on or after June 20, 2002, obtained a second mortgage loan secured by residential real estate located in Missouri and who paid the loan originator a funding or underwriting fee at closing and whose loan was subsequently purchased by, or assigned to, Defendant UBS, and then sold to a New York express trust. The schedule and page limits for this briefing set forth in the conclusion section of this order.

**A.     At present, the Rule 23(a) factors are partially satisfied.**

**1.     The Court directs the parties to submit additional briefing on numerosity.**

There is no magic number to satisfy the numerosity requirement, the putative class must simply be so numerous that joinder of all class members is impractical. *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1119 (8th Cir. 2005). In its opening brief Plaintiff suggested that 433 second mortgage loans fell within the proposed class definition. Defendants argued this number was wildly inflated, and that the actual number was less than twenty.

The parties briefed this issue before the Court issued its summary judgment ruling, which arguably narrowed the size of any potential class here. Accordingly, the Court directs the parties to re-brief this issue in light of the Court's summary judgment order and holdings in the balance of this order.

**2.     The commonality requirement is satisfied.**

Commonality does not require complete uniformity of all legal and factual questions. Rather, the commonality requirement of 23(a) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995) (quotations omitted). The Court has already addressed one

common legal question between all potential class members here, namely whether Defendants indirectly violated the MSMLA by virtue of the fact that a funding fee and underwriting fee paid to Option One were rolled into the principal of the Loan at closing, and then received by the Defendants over time. One common question that still remains is whether potential class members are entitled to punitive damages as a result of Defendants' indirect violation of the MSMLA. Consequently, the Court holds the commonality requirement is satisfied.

### 3. The typicality requirement is satisfied.

Typicality is similar to commonality, but deals with the named plaintiff specifically, rather than the entire class generally. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Id.* In this case, Mayo's claim is typical of persons who obtained a second mortgage loan secured by residential real estate located in Missouri, who paid the loan originator a funding fee or underwriting fee at closing, and whose loan was subsequently purchased by or assigned to Defendant UBS, and then sold to a New York express trust whose trustee was Defendant DBNTC. Consequently the Court finds Mayo's claim satisfies the typicality requirement of an identifiable class of plaintiffs.

### 4. Mayo is an adequate class representative to pursue compensatory and punitive damages, but not injunctive relief.

The purpose of ensuring that the named plaintiff will adequately represent the class is "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). In order to satisfy 23(a)(4)'s adequacy requirement, the named plaintiff must be "part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (quotations omitted); *see also U.S. Fidelity &*

*Guar. Co. v. Lord,* 585 F.2d 860, 873 (8th Cir. 1978) (noting that the adequacy of the named plaintiff is about determining whether his or her interests are "antagonistic to those of class"). In addition to determining the adequacy of the plaintiff as a class representative, the Court must determine whether plaintiff's counsel is adequate. *Id.*

Defendants contest Mayo's adequacy, but not class counsel's abilities. In the absence of evidence to the contrary, the Court assumes that class counsel is adequate. *Morgan v. United Parcel Svc. of Am., Inc.,* 169 F.R.D. 349, 357 (E.D. Mo. 1996).

With respect to Mayo's adequacy to represent the class, Defendants argue he does not have any interest in obtaining relief from paying future interest under a second mortgage loan, thus he cannot adequately represent a putative class which would seek that relief. Plaintiff responds that the core questions of liability and damages in this case are the same, and that the request for injunctive relief does not create a significant conflict of interest that would affect Mayo's adequacy as a class representative.

The Court holds that because Mayo has repaid his loan he lacks standing to seek injunctive relief. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983) (demonstrating necessity of future harm for equitable standing). Consequently, he is an inadequate class representative as to injunctive relief. *See Chimeleski v. City Prods. Corp.,* 71 F.R.D. 118, 153 (W.D. Mo. 1976) (noting that the fact that the certain plaintiffs were not "members of any class or subclass in the requests for injunctive relief" rendered them unable to represent that part of the class). If Mayo has no stake in whether injunctive relief is given or not, he will not be particularly interested in this aspect of the case, and his lack of interest would be antagonistic to those who might benefit from injunctive relief.

This does not, however, affect his adequacy as representative to pursue compensatory and punitive damages.

The Court finds no merit to the argument that Mayo is incompetent to be a class representative because he allegedly "knows essentially nothing about the lawsuit he proposes to lead." Mayo appears to have at least a basic understanding of how a class action lawsuit works and his obligations as a class representative. And it is well-established that "[c]lass representatives need not have special understanding of the factual or legal issues in their cases." *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009). Accordingly, the Court holds that Plaintiff is an adequate class representative for the class members' damages claims, but not to seek injunctive or declaratory relief.

**B.      The requirements of Rule 23(b)(3) are met.**

Rule 23(b)(3) requires that the Court find that common issues predominate over individual ones, and that a class action is the superior method of adjudicating the case. This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

   **1.      Common issues predominate over individual issues.**

"At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). "If the same evidence will suffice for each member to make a prima facie showing, then it

9

becomes a common question." *Id.* "In making its determination, the district court must undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial. *Avritt*, 615 F.3d at 1029. "The standard for certification imposed by Rule 23(b)(3) is more demanding that the commonality requirement of Rule 23(a), and mandates caution, particularly where individual stakes are high and disparities among class members are great." *In re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 397 (E.D. Mo 2008).

Defendants contend that Plaintiff has not established either commonality or predominance, and that a class action is not a superior method of adjudicating these cases. With respect to commonality, the Court holds there are at least two common issues here the resolution of which will advance the litigation, namely (1) whether UBS's purchase of a second mortgage loan where a funding fee and/or an underwriting fee were paid to Option One and rolled into the principal of the loan at closing is an indirect violation of the MSMLA, and (2) if so, whether UBS is liable for punitive damages.

Defendants also argue that Plaintiff cannot establish predominance because determining the liability of any defendant to any class member would require a highly individualized inquiry into each borrower's loan file. There is no merit to this argument. Given the Court's summary judgment ruling and an appropriately defined class definition, the individualized inquiry that would be needed would be trivial. To make their prima facie cases the putative class members must establish that (1) they obtained a secondary mortgage loan; (2) an unlawful rate was charged; and (3) the fees charged were not authorized by the MSMLA. *Avila v. Cmty. Bank of Va.*, 143 S.W.3d 1, 4-5 (Mo. App. 2003). Defendants contend that this means that for every class member the Court would have to ask whether the loan was part of a single extension of credit, whether the class member was charged an

unauthorized fee, and whether the loan proceeds were used for business purposes. The Court's summary judgment ruling answers these first two questions, holding that a single extension of credit under the MSMLA includes "piggyback" loans such as Mr. Mayo's, and that a funding or underwriting fee paid to an originator at closing is an illegal fee. As for the third question, the loan documents themselves should indicate what the proceeds were used for, which appears to be overwhelmingly for the purchase of an owner-occupied residence. While some amount of inquiry would be required, it would be routine and mechanical, and not highly individualized. The Court also notes that if it does certify a class, it can narrowly tailor the class definition to avoid the need for any substantive individualized inquiry. The fact that each loan file would have to be consulted to determine class membership, of course, does not mean that individual issues would predominate in resolving the claims.

There is also no merit to Defendants' argument that the calculation of damages precludes class certification. The data for these computations are readily available in the loan files and easily made. Numerous courts have recognized that damages are inherently individualized and are rarely a barrier to certification. *See, e.g., In re Workers' Compensation,* 130 F.R.D. 99, 110 (D. Minn. 1990). Damages here will be easier to calculate than those in *Glen v. Fairway Independent Mortgage Corp.*, where class damages for failing to disclose yield-spread premiums in good-faith estimates were determined using computer records and clerical assistance. 265 F.R.D. 474, 481-82 (E.D. Mo. 2010) (holding individualized damages did not defeat certification). This case does not involve the kinds of complex, highly individualized determinations which preclude class certification, such as calculating the cost of monitoring individuals with defective artificial heart

valves. *In re St. Jude Medical, Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (holding damages calculation too individualized for predominance).

Defendants also complain that certification is improper because some putative class members may be subject to individualized affirmative defenses or counterclaims, or possibly have bankruptcy issues. As a threshold matter these arguments are speculative and premature because Defendants have not identified any actual putative class member who has such a problem, and Plaintiff has not been permitted discovery into putative class members claims. Moreover "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). Similarly, potential compulsory counterclaims do not serve as a barrier to class certification. *Owner-Operator Indep. Drivers Ass'n., Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 546 n.5 (W.D. Mo. 2002). Finally Defendants have cited no cases, and the Court can find none, suggesting that the mere possibility that a potential class member might have some bankruptcy issue precludes a finding of predominance.

Next, Defendants suggest that the punitive damages claim militates against class treatment. They contend that because UBS retained and relied upon several different firms to conduct due diligence on the loans it purchased for compliance with applicable law, for every loan in the class there will have to be an individualized inquiry consisting of first identifying the firm responsible for conducting the due diligence on that particular transaction, and then an inquiry into the efforts that firm made. Plaintiff argues that UBS was generally indifferent to the putative class members' rights under the MSMLA, and it has presented some evidence to this effect in its summary judgment briefing. Unfortunately, the record is undeveloped on a number of crucial points here. If there were

12

only two or three different firms UBS hired to conduct due diligence, and they all used the same methodology, then common issues would still prevail. If, however, there were substantially more firms and they used different methods to determine compliance, then this would likely preclude establishing defendant's liability for punitive damages with common evidence. It appears from the currently existing record that punitive damages are appropriate for class certification, but the Court may reconsider this issue at the close of the second stage of discovery.

### 2. A class action is the superior method of adjudicating the case.

Defendants argue that a class action is not the superior method of adjudicating this case because complex individual issues will dominate the litigation, and given the large amounts of damages in dispute and the availability of attorneys' fees, individual members of the putative class have a compelling interest in filing their own lawsuits. Plaintiff contends a class action is superior because there are common issues here, and a single action is preferable to many actions where results may be inconsistent. Plaintiff also argue it is not economically feasible for class members to pursue their own lawsuits.

Defendants' first argument essentially repeats their contention, which the Court has already rejected, that individual issues preclude a finding of predominance. With respect to the second argument, the Court finds the cost of litigating an individual claim against Defendants is so high that no individual plaintiff could likely afford to bring a lawsuit, much less a member of the putative class here whose finances are such that that the only mortgage loans available to them carry very high interest rates. Additionally, an individual class member's potential recovery is not sufficiently high that a qualified attorney would be willing to take on an individual case for a contingency fee. An individual claim that is potentially worth thousands of dollars is likely to be a "negative value"

case when brought against large financial institutions with almost unlimited resources to litigate, even when a attorneys' fees are available to a prevailing plaintiff.

In sum, the Court finds that a class action is a super method for adjudicating this case, and that the requirements of Rule 23(b)(3) are met.

## Conclusion

For the reasons outlined above, the Court ORDERS the parties to submit additional briefing on two issues: (1) an amended proposed class definition; and (2) whether an appropriately defined class would be sufficiently numerous to make joinder of all members impracticable. The additional briefing should address these issues in light of the Court's summary judgment order and the holdings in this order.

The briefing schedule shall be as follows. On or before April 15, 2011, Plaintiff shall submit a brief consisting of two parts. The first part should be a proposed amended class definition and argument in support. This portion of the brief shall not exceed five pages. The second part of the brief should explain how the amended class would be sufficiently numerous to make joinder of all members impracticable. This portion of the brief should not exceed five pages.

Defendants shall then have twenty-one days to file a single, combined brief in response. Defendants' brief should consist of two parts. The first part should address the question of a proposed amended class and should not exceed five pages. The second part should address the question of numerousity and should not exceed five pages.

Plaintiff shall then have seven days to file a single, combined reply to the arguments in Defendants' brief. Plaintiff's reply brief shall not exceed five pages total.

**IT IS SO ORDERED.**

DATE: <u>March 25, 2011</u>          <u>/s/ Greg Kays                    </u>
                                     GREG KAYS, JUDGE
                                     UNITED STATES DISTRICT COURT