IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL D. MAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-00568-CV-W-DGK |
| | ) | |
| UBS REAL ESTATE SECURITIES, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

This case is a putative class action brought under the Missouri Second Mortgage Loan Act ("MSMLA"). Plaintiff Michael Mayo ("Mayo") alleges he was charged illegal fees at the closing of his residential second mortgage loan and is suing the various entities who acquired or serviced his loan after closing.

Now before the Court is Defendants UBS Real Estate Securities, Inc. ("UBS") and Deutsche Bank National Trust Company, in its capacity as trustee of the MAST Specialized Loan Trust 2007-01 ("Deutsche Bank"), "Joint Notice and Motion for Order to Show Cause" (doc. 278). Mayo has also filed a new class action lawsuit in state court bringing the same claims against Defendants GMAC Mortgage, LLC ("GMACM") and Residential Funding Company, LLC ("RFC") only. In response, UBS and Deutsche Bank move for an injunction enjoining Mayo from settling his claims against GMACM and RFC in state court, arguing that the state court lawsuit subverts this Court's removal jurisdiction and threatens to interfere with the adjudication of this case.

Finding that the Court still possesses jurisdiction over Mayo's claim against GMACM and RFC, and that Mayo's claim in the state court lawsuit potentially subverts the federal court's removal jurisdiction, the motion is GRANTED.

Plaintiff Mayo is enjoined from any participation in the state court lawsuit for 30 days. During this time, the Court will determine whether and how to revise its previously entered orders.

**Background**

On June 20, 2008, Plaintiff filed a putative class action lawsuit in the Circuit Court of Jackson County, Missouri, alleging that Option One Mortgage Corporation charged him illegal fees during the closing on his second mortgage loan; that subsequent assignees of the loan, Defendants UBS and Deutsche Bank, violated the MSMLA by directly or indirectly charging or receiving the illegal fees; and that Defendants GMACM and RFC violated the MSMLA in the course of servicing the loans.[1] On August 7, 2008, Defendants removed the case to this Court pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA"). Plaintiff did not move to remand, and the deadline to do so (except on the basis of subject-matter jurisdiction) has since expired. 28 U. S.C. § 1447(c).

On January 13, 2010, a federal district court in the Western District of Missouri granted summary judgment for the defendant in another, separate case arising under the MSMLA. *Washington v. Countrywide Home Loans, Inc.,* No. 08-00459-CV-W-FJG, 2010 WL 199881 (W.D. Mo. Jan. 13, 2010). Ruling on an issue of first impression, the district court in *Washington* held that the defendant had not violated the MSMLA by charging fees not enumerated in the statute. *Id.* at *4. The legal issue in this case related to one of many issues in the present case. The plaintiffs in Washington subsequently appealed to the Eighth Circuit Court of Appeals.

---

[1] The loan servicers function here was administrative, to collect payments due on the loan, forward these payments to the appropriate owner or custodial account, and process paperwork associated with the loan, such as sending the borrower an IRS form 1098 showing the interest paid on the loan. Summary Judgment Order at 7-11. The servicers never had any ownership interest in the loan. Ibid.

On November 23, 2010, the Missouri Court of Appeals for the Western District issued its opinion in *Mitchell v. Residential Funding Corporation.* 334 S.W.3d 477 (Mo. App. 2010). In reviewing an appeal from a $104 million jury verdict, the *Mitchell* court read the MSMLA very broadly. It affirmed in part, reversed in part, and remanded the case for further proceedings. Among other rulings, it held that only fees explicitly enumerated in the statute were legal.

On December 3, 2010, Plaintiff filed a "Notice of Partial Class Settlement" (doc. 233) in which he asserted that he had "reached an agreement in principle" to settle the claims that he and the members of the putative class had against Defendant RFC in this case. Mayo stated that,

> The parties are in now the process of preparing the settlement papers and related documents for presentation to the Court for approval under Fed. R. Civ. P. 23. The parties will keep the court advised as to the progress of the documentation process. Barring unforeseen circumstances, the parties anticipate that they will be able to present their Joint Motion for Preliminary Approval of Proposed Class Action Settlement and certification of a settlement class within a reasonable period of time. The subject settlement is limited to the claims against RFC. The Mayos[2] will continue to prosecute their claims against all other parties individually and on behalf of the putative Class.

Notice at 1.

After the initial notice, however, the Court received no further information from the parties regarding the proposed settlement. Concluding that the parties were unable to reach a settlement agreement, the Court turned its attention to ruling on the pending summary judgment motions.

On January 13, 2011, the Court issued a partial summary judgment order (doc. 243). Among other things, the order held that as "post-closing, non-loan holder servicers who did not

---

[2] At the time this notice was filed, Plaintiff Michael Mayo's wife, Sharron Mayo, had not been dismissed from this lawsuit.

3

have any ownership interest in the Loan such that they were entitled to any interest or principal from it, neither GMACM or RFC directly or indirectly charged, contracted for or received any illegal fees," thus they could not be liable. The order dismissed all the claims against GMACM and RFC with prejudice.

On January 27, 2011, recognizing that the Court retained jurisdiction over the dismissed Defendants, Plaintiff moved the Court to reconsider its order, including the dismissal of GMACM and RFC (doc. 244). On February 8, 2011, GMACM and RFC, also cognizant that the Court could revisit its order dismissing them from the litigation, began preparing suggestions in opposition to the motion, asking for an extension of time to respond (doc. 246). The Court eventually denied the motion Plaintiff's initial motion for reconsideration (doc. 247).

On February 1, 2011, the Missouri Supreme Court issued a denial of the *Mitchell* defendant's application for rehearing and/or motion to transfer to hear an appeal.

On July 1, 2011, the Court denied Plaintiff's motion to certify class (doc. 256), holding that the proposed class definition was overbroad.[3]

On July 29, 2011, the Eighth Circuit released its decision in the *Washington v. Countrywide Home Loans, Inc.* appeal. The Eighth Circuit reversed the district court's award of summary judgment, concluding that the *Mitchell* decision was the best evidence of Missouri law. It stated, "In a diversity case, the law declared by the state's highest court is binding. The Missouri Supreme Court allowed the *Mitchell* opinion to stand as authority, by denying transfer of the case from the court of appeals. The *Mitchell* case is, thus, the best evidence of Missouri law." 655 F.3d at 873 (citation omitted). After adopting *Mitchell's* holding that the list of

---

[3] The July 1, 2011 motion to certify class is was actually Plaintiff's second attempt to certify a class. The Court rejected Plaintiff's first proposed class definition as overbroad on March 25, 2011.

authorized fees under the MSMLA is an exclusive list, the Court of Appeals noted that a portion of this Court's summary judgment order in this case was in conflict with *Mitchell*. *Id.*

The same day the Eighth Circuit handed down its decision in *Washington*, this Court issued an order *sua sponte* stating,

> Given that the Eighth Circuit has embraced the *Mitchell* decision, the Court believes it should re-visit portions of its January 13, 2011 summary judgment ruling . . . the Court orders Plaintiff and the Defendants collectively, including previously dismissed Defendants Residential Funding Company, LLC and GMAC Mortgage LLC, to file a brief . . . identifying any issues in the Court's previous orders it believes should be re-addressed in light of the *Washington* decision.

July 29, 2011 Order at 2-3.

On August 15, 2011 Plaintiff filed a brief arguing that the Court erred in ruling that loan servicers GMACM and RFC could not be liable, and that "in light of *Washington* and *Mitchell*, this Court's [summary judgment] ruling . . . must be amended to deny the servicers' motion for summary judgment." (Doc. 272 at 5-6.) Mayo also argued that if loan servicers could be sued then his proposed class definition was not overbroad, and thus a class, with him as lead plaintiff, could be certified. (Doc. 272 at 10-11.) On August 22, 2011 Plaintiff filed a reply brief reiterating these arguments. (Doc. 275 at 8-10.)

At the same time, Defendants GMACM and RFC filed briefs arguing that the summary judgment and class certification rulings were not inconsistent with either *Mitchell* or *Washington*. (Doc. 274 at 7-8, doc. 276 at 10.) In their reply, they suggested that reconsideration of the summary judgment issue was unnecessary "because Plaintiff has reached an agreement in principle to settle his clams against GMACM and RFC."

On November 9, 2011, while this Court's *sua sponte* reconsideration of its summary

5

judgment motion was pending, Mayo filed a petition in Missouri state court on behalf of a putative class seeking relief against GMAC and RFC for alleged violations of the MSMLA. Mayo is the third named plaintiff in the Petition along with Joyce W. and Luke Shokere, who are third-parties to the present action. That case, *Shokere v. Residential Funding Company, LLC and GMAC Mortgage, LLC*, was filed in the Circuit Court of Jackson County, Missouri, the same court from which this action was removed.[4] *Shokere* consists of claims that Mayo has asserted and continues to assert against GMACM and RFC in this case, and claims that Mayo's counsel is also asserting in another MSMLA action currently pending in the Western District of Missouri, *Thomas v. U.S. Bank, N.A.*, No. 5:11-cv-6013 (Wright, J.).

On November 10, 2011, the day after filing suit in state court, Mayo and the other *Shokere* plaintiffs moved for preliminary approval of a class-wide settlement in their state court action. Their motion acknowledged that the proposed settlement relates to "numerous claims being asserted against [GMACM and RFC] . . . that are being asserted or were previously asserted as a part of two different civil actions pending before the United States District Court for the Western District of Missouri," namely this case and the *Thomas* case. (Doc. 279-3, Motion for Preliminary Approval of Class Action Settlement from the *Shokere* case, submitted as exhibit C to the pending motion, at 2-3.) On November 14, 2011, the Jackson County Circuit Court preliminarily approved the proposed class action settlement. A final hearing on the settlement is set for today, December 16, 2011, at 4:00 p.m. in Division 15 of the Jackson County Circuit Court.

Late on December 13, 2011, Defendants UBS and Deutsche Bank filed the pending

---

[4] The Shokere case number is 1116-cv30478. It is pending in Division 15, with the Honorable Robert M. Schieber presiding.

motion, claiming they discovered the existence of the *Shokere* case only serendipitously during a routine review of court filings.  They ask the Court to enjoin Mayo from attempting to obtain approval for a proposed settlement on behalf of a class in the state court action.

Plaintiff, GMACM, and RFC responded to the pending motion on December 15 (docs. 281, 282). Plaintiff subsequently filed two notices of supplemental authority (docs. 283, 284) that the Court has reviewed.

### Standard

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law."  28 U.S.C. § 1651(a).  The Supreme Court has "repeatedly recognized," a federal court can "issue such commands under or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

The Anti-Injunction Act,  however,  limits a federal court's power to enjoin proceedings in state court.   It provides that, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  A federal court may not enjoin a state court proceeding unless the injunction falls within one of these three exceptions.  *KPERS v. Reimer & Koger Assocs., Inc.,* 77 F.3d 1063, 1068 (8th Cir. 1995).  These exceptions are construed narrowly and doubts are resolved in favor of letting the state court action proceed.  *Id.*

The federal removal statute provides that when a removal petition is filed with the clerk of the state court, that court "shall proceed no further unless and until the case is remanded."  28 U.S.C.

§ 1446(d). The removal statute qualifies as an express authorization by an Act of Congress. *Mitchum v. Foster*, 407 U.S. 225, 234 (1972); *KPERS*, 77 F.3d at 1069 ("injunctions to stay state court proceedings in removed cases come within the first exception to the Anti-Injunction Act."). Additionally, courts of appeal in other circuits have held that federal courts can enjoin state court proceedings to protect their removal jurisdiction under the "necessary in aid of its jurisdiction" exception. 28 U.S.C. § 2283. *See, e.g.*, *Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1254-55 (11th Cir. 1988). Finally, section 1446(d) authorizes federal courts "to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction." *KPERS*, 77 F.3d at 1069; *accord Davis Int'l, LLC v. New Start Group Corp.,* 488 F.3d 597, 605 (3d Cir. 2007).

## Discussion

At the outset, the Court notes that it appreciates the parties' hard work in briefing this matter on short notice.

Defendants UBS and Deutsche Bank argue that Mayo is engaged in cynical legal gamesmanship

> [b]y attempting to obtain approval of his proposed settlement from a different court, one that likely is not aware of the relationship between that settlement and Mr. Mayo's remaining claims against UBS and [Deutsche Bank] in this action, Mr. Mayo apparently is trying to bar UBS and [Deutsche Bank] from asserting valid defenses to his claims in this action.

Suggestions in Supp. (doc. 279) at 7-8. This gamesmanship, Defendants contend, attempts to subvert the Court's removal jurisdiction and threatens to interfere with the adjudication of claims in this case.

In response, Mayo, GMACM, and RFC argue that they are not currently parties to this case; that the moving Defendants lack standing to object to the state court settlement; and that the state court action will not impair this Court's ability to adjudicate this case or impede its

8

Case 4:08-cv-00568-DGK   Document 285   Filed 12/16/11   Page 8 of 11

jurisdiction. They argue that *Shokere* is not the same as this action, and that there is presently a single claim before the Court here, namely Mayo's claim against UBS and Deutsche Bank. Mayo also contends that any delay in the *Shokere* action will have a "truly catastrophic effect," and suggests that if the Court grants the injunction, it should set the amount of the bond at "no less than $12 million." Mayo Suggestions in Opp'n (doc. 281) at 8-9.

As an initial matter, the Court holds that GMACM and RFC are still parties to this action and still subject to this Court's jurisdiction. The Court's summary judgment order dismissing GMACM and RFC from this action was a partial summary judgment order because it did not dispose of all the issues in this case. Consequently, it is a non-final, non-appealable interlocutory order. *Laird v. Stilwill*, 982 F. Supp. 1346, 1353-54 (N.D. Iowa 1997). Additionally, Federal Rule of Civil Procedure 54(b) provides that,

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment . . . Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

While the dismissal with prejudice of their claims may have prevented Mayo from re-filing his claims against them, it did not deprive the federal court of jurisdiction over these claims. Indeed, if the Court's summary judgment order had irreversibly divested the Court of jurisdiction over Mayo's claim with GMACM and RFC, the Court could not reconsider its prior ruling with regard to GMACM and RFC as loan servicers, as Mayo is still asking the Court to do. Mayo Suggestions in Opp'n (doc. 281) at 7, n.4. Consequently, the Court holds it still has jurisdiction over these parties and their dispute, a dispute which is part and parcel of the original controversy

9

that GMACM removed from state court.

Furthermore, although UBS and Deutsche Bank may or may not lack standing to object to any proposed settlement between Mayo, GMAC, and RFC, that is a question for another day. The question here is which court possesses jurisdiction over the claim between Mayo, GMAC, and RFC. That court is a federal court, not the Circuit Court of Jackson County.

The Court also notes that because it has not certified any class in this case, it has jurisdiction over Mayo's claims against GMACM and RFC only. It does not have jurisdiction over any other persons' claims against GMACM and RFC, including Joyce W. and Luke Shokere.

The Court finds that the state court action will likely impair this Court's ability to adjudicate this case or impede its jurisdiction. Mayo's dispute with GMACM and RFC is properly before this Court pursuant to this Court's removal jurisdiction. The state court settlement agreement and the doctrine of res judicata provide that if Mayo's claim is settled in that case, it cannot be adjudicated here. Consequently, the Court holds that any settlement of Mayo's claim in the state court action would necessarily impair this Court's ability to adjudicate his claim in this case.

Finally, given the procedural history of this case, the timing of the filing and subsequent motion for settlement in the *Shokere* lawsuit, and the fact that Mayo's claim against GMACM and RFC in the *Shokere* case is an identical part of his claim that was originally removed to federal court, the Court finds there is a real question whether Mayo's participation in the *Shokere* lawsuit is an attempt to steer settlement of his claims with GMACM and RFC from this Court into the Circuit Court of Jackson County. Because such forum shopping would subvert the federal courts removal jurisdiction, the Court grants Defendants' requested injunction for 30

10

days, so the Court can determine to what extent it needs to revise the previously entered partial summary judgment order. To assist in this determination, the Court will likely order additional briefing or oral argument from the parties during this 30 day period.

With respect to the amount of the bond that should be set, the Court finds Plaintiff's suggestion of $12 million is not supported by reason or fact. A bond of $5,000 is appropriate.

## Conclusion

Finding that the Court still possesses jurisdiction over Mayo's claim against GMACM and RFC, and that Mayo's claim in the *Shokere* lawsuit potentially subverts the federal court's removal jurisdiction over this claim, the motion is GRANTED.

The Court hereby ORDERS that an injunction is entered against Mayo and his attorneys as follows:

1. Plaintiff Mayo and his wife, and anyone acting on his behalf, are enjoined for 30 days from any activity or participation in the *Shokere* lawsuit which might adjudicate or settle their claim, or from filing any similar lawsuit against GMACM and RFC in any other court, without the prior written approval of this Court.

2. This Order shall go into effect immediately. Defendants UBS and Deutsche Bank collectively shall post a surety bond in the amount of $5,000 within seven days. In the alternative to posting a surety bond, they may deposit in the Court registry $5,000.

**IT IS SO ORDERED.**

DATE: December 16, 2011  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT