IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL D. MAYO, <br> individually and on behalf of all those <br> similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> USB REAL ESTATE SECURITIES, INC. <br> and DEUTSCHE BANK NATIONAL TRUST <br> COMPANY (in its capacity as trustee of <br> the MASTR SPECIALIZED LOAN <br> TRUST 2007-01), <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 08-00568-CV-W-DGK |

## ORDER DENYING CLASS CERTIFICATION

This case is a putative class action brought under the Missouri Second Mortgage Loan Act, Mo. Rev. Stat. §§ 408.231- 408.241. Plaintiff Michael Mayo ("Mayo") alleges he was charged illegal fees at the closing of his residential second mortgage loan and is suing the various entities who subsequently acquired or serviced his loan.

Now before the Court is Plaintiff's Renewed Motion for Class Certification (Doc. 296). In ruling on this motion, the Court has reviewed Plaintiff's initial Motion for Class Certification (Doc. 169); the Court's Order Regarding Class Certification (Doc. 250) directing the parties to submit supplemental briefing on an amended class definition and the question of numerosity; the Court's Second Order Regarding Class Certification denying Plaintiff's initial motion for class certification (Doc. 256); the Court's Order reversing portions of its summary judgment order and directing supplemental briefing on the issue of class certification in light of the Eighth Circuit's decision in *Washington v. Countrywide Home Loans, Inc.* (Doc. 291); and finally the parties'

1

supplemental briefs (Docs. 297, 311, 313, and 321).

Finding that Plaintiff has not carried his burden of defining an appropriate class, the motion for certification is DENIED.

## Background

The Missouri Second Mortgage Loan Act ("MSMLA") is a "fairly comprehensive" consumer protection measure, enacted to protect Missouri homeowners by regulating "the business of making high-interest second mortgage loans on residential real estate." *U.S. Life Title Ins. Co. v. Brents*, 676 S.W.2d 839, 841 (Mo. App. 1984). The statute allows lenders to charge interest rates that exceed the statutory usury rates, but in exchange, the statute "limits the closing costs and fees that lenders may charge" to a small list of fees and charges enumerated in the statute. *Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873-74 (8th Cir. 2011). The statute also creates a private right of action in anyone "who suffers any loss of money or property as a result of" a violation of the statute. Mo. Rev. Stat. § 408.562.

In October of 2005, Option One Mortgage Corporation ("Option One") loaned Plaintiff Michael Mayo $25,800 on a "piggyback" second mortgage loan ("the Loan") which Mayo used to purchase his home. The loan was to be repaid with interest at the yearly rate of 11.65% in monthly installments over thirty years, which exceeded the statutory usury rate. At closing, Mayo paid a funding fee, an underwriting fee, a tax service contract fee, a flood search fee, a courier/delivery fee, a wire fee, and a closing fee to Option One.

In the fall of 2006, Option One sold the Loan to Defendant UBS Real Estate Securities, Inc. ("UBS") as one of 135 loans in a "pool" of loans. UBS hired Defendant GMACM, LLC ("GMACM") to service these loans. Servicing the loans meant performing administrative tasks, such as collecting from borrowers payments due on the loans, including interest, or mailing tax

2

forms to the borrowers.

In March of 2007, UBS sold the Loan to Mortgage Asset Securitization Transactions, Inc., which in turn deposited the Loan into a trust designated as "MASTR Specialized Loan Trust 2007-01" ("MASTR Trust"). The trustee of the MASTR Trust was Defendant Deutsche Bank National Trust Company ("DBNTC"). The MASTR Trust received interest and payments on the Loan and then dispersed these payments to the Trust's shareholders. Defendant Residential Funding Company, LLC ("RFC") acted as the Master Servicer/Trust Administrator for the pool of loans transferred to the MASTR Trust.

On June 20, 2008, Plaintiff Michael Mayo filed this putative class action lawsuit against Defendants GMACM. On December 10, 2008, Plaintiff filed his first amended complaint naming UBS, DBNTC (in its capacity as trustee of the MASTR Trust), and RFC as additional Defendants. GMACM and RFC have settled with Mayo and the putative class members,[1] leaving UBS and DBNTC as the remaining Defendants in this case.

To date, the Court has granted Mayo partial summary judgment, holding that the funding fee, underwriting fee, tax service contract fee, courier/delivery fee, wire fee, and closing fees charged at closing were not expressly permitted under § 408.231.1[2] of the MSMLA. The issue

---

[1] Defendants GMACM and RFC entered into a settlement with Mayo and all of the putative class members in the Circuit Court of Jackson County, Missouri that was approved on March 12, 2012. *Shokere v. Residential Funding Co., LLC and GMAC Mortgage, LLC*, 1116-cv30478. Accordingly, they are no longer parties to this action.

[2] No charge other than that permitted by section 408.232 shall be *directly or indirectly charged, contracted for or received* in connection with any *second mortgage loan*, except as provided in this section:
    (1) Fees and charges prescribed by law actually and necessarily paid to public officials for perfecting, releasing, or satisfying a security interest related to the second mortgage loan;
    (2) Taxes;
    (3) *Bona fide closing costs paid to third parties, which shall include*:
        (a) Fees or premiums for title examination, title insurance, or similar purposes including survey;
        (b) Fees for preparation of a deed, settlement statement, or other documents;
        (c) Fees for notarizing deeds and other documents;

3

now before the Court is whether it should certify this case as a class action, and if so, what the scope of the class should be.

## Standard Governing Class Certification

Rule 23 governs class certification. A party seeking class certification must satisfy all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).[3] The decision whether or not to certify a class is not a reflection of the merits of the case. *Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006).

Under Rule 23(a), class certification is appropriate when "(1) the class is so numerous that joinder of all members is impracticable . . . (2) there are questions of law or fact common to the class . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The requirements are typically summarized as numerosity, commonality, typicality, and adequacy. *In re Constar Int'l Inc. Sec. Litig.,* 585 F.3d 774, 780 (3d Cir. 2009). District courts must engage in a "rigorous analysis" in determining whether the 23(a) factors are satisfied. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982).

The party seeking class certification bears the burden of showing that all of the requirements of class certification have been met. *Perez-Benites v. Candy Brand, LLC*, 267

---

(d) Appraisal fees; and
(e) Fees for credit reports;
(4) Charges for insurance as described in subsection 2 of this section;
(5) A nonrefundable origination fee not to exceed five percent of the principal which may be used by the lender to reduce the rate on a second mortgage loan;
(6) Any amounts paid to the lender by any person, corporation or entity, other than the borrower, to reduce the rate on a second mortgage loan or to assist the borrower in qualifying for the loan;
(7) For revolving loans, an annual fee not to exceed fifty dollars may be assessed.
Mo. Rev. Stat. § 408.231.1 (emphasis added).

[3] The Court previously held that the Rule 23(b) requirement was satisfied and so restricted the supplemental briefing to defining an appropriate class and the Rule 23(a) prerequisites.

F.R.D. 242, 246 (W.D. Ark. 2010). This includes the burden of defining a proper class. *See In re Paxil Litig.,* 212 F.R.D. 539, 546 (C.D. Calif. 2003).

A class should not be certified if it is defined in such a way "that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.). At the same time, the class should not be defined as a so-called "fail-safe" class, a class where membership is restricted to only those who have valid claims. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012). Such a class is improper because the "class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id*. But "[d]efining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science." *Id.* A court can often resolve these problems by refining the class definition rather than denying certification. *Id.*

## Discussion

**A. The proposed class definition is fatally overbroad.**

Plaintiff proposes a class be certified based on the following definition:

> All persons who obtained a Second Mortgage Loan secured by Residential Real Estate located in Missouri that was purchased by and/or assigned to Defendant UBS Real Estate Securities, Inc. and made one or more payments of principal or interest on or after June 20, 2002.
>
> Definitions: For purposes of the Class,
>
> "Second Mortgage Loan" is defined by § 408.231.1 RSMo and shall mean "a loan secured in whole or in part by a lien upon any interest in Residential Real Estate created by a security instrument, including a mortgage, deed of trust, or other similar instrument or document, which provides for interest to be calculated at the rate allowed by the provisions of section 408.232, which Residential Real Estate is subject to one or more prior mortgage loans."

5

> "Residential Real Estate" shall mean "any real estate used or intended to be used as a residence by not more than four families."

This language is quite broad. It defines the class without reference to any fees the putative class members may have paid and without reference to a common loan originator, but by reference to loans purchased by or assigned to a common acquirer, UBS, where any payments were made on the loan after June 20, 2002.

Remaining Defendants UBS and DBNTC (collectively "the Defendants") argue that this definition is overbroad because it includes in the class: (1) borrowers who did not pay any illegal fees at closing; (2) borrowers who filed for bankruptcy and thus allegedly lack standing to bring claims; (3) borrowers who no longer have claims because the statute of limitations has run; (4) borrowers who received loans for businesses purposes so their loans are not covered by the MSMLA; and (5) borrowers with true "piggyback" loans that are not covered by the MSMLA. The Court considers each of these arguments in turn.

### 1. The definition is not overbroad because it includes a few individuals who did not pay any impermissible fees.

Defendants contend that a review of 50 loan files produced in connection with the GMACM/RFC settlement show that three of the files—6% of them—do not violate the MSMLA. In reply, Plaintiff notes that this means at least 94% of the loans in the proposed class contain impermissible fees. Thus, the proposed class definition is not overbroad.

The Court agrees. If only a handful of individuals in the putative class may not have paid illegal fees at closing, the class is not impermissibly overbroad. A class is defined too broadly only when a large number of members could not have been harmed by the defendant's conduct. *See Messner*, 669 F.3d at 824. The Court must avoid defining the class as a "fail-safe" class so

that only individuals who have valid claims are class members. *Id.* at. 825. Consequently, the Court finds this argument lacks merit.

### 2. The definition is overbroad because it encompasses many individuals who lack standing to bring suit.

Next, Defendants argue that Plaintiff's proposed class definition is fatally flawed because it includes a large number of individuals who lack standing to bring claims. Defendants note the putative class includes many borrowers who filed for bankruptcy after receiving their second mortgage loans. They argue any claim these borrowers might have possessed no longer belongs to the borrower, but to his or her bankruptcy estate which is often represented by a bankruptcy trustee who alone may sue over the bankruptcy estate's property. *Miller v. Pac. Shore Funding*, 92 F. App'x 933, 937 (4th Cir. 2004) (affirming that claims against lenders for charging illegal fees on second mortgage loans by borrowers who subsequently filed for bankruptcy can be pursued only by the borrowers' bankruptcy trustee). Thus, the borrower no longer has standing to sue under the MSMLA, only the bankruptcy trustee does. *See* 11 U.S.C. § 323; *In re Brooks*, 227 B.R. 891, 895 (Bkrtcy. W.D. Mo. 1998). In some cases where the bankruptcy proceedings have ended, the borrower may be judicially estopped or otherwise precluded from bringing the claim unless it was listed in the mandatory bankruptcy filings. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1074 (8th Cir. 2006). Whether a plaintiff can bring claims that purportedly belong to his or her bankruptcy estate depends on such factors as the existence and timing of a bankruptcy petition, whether the claims are exempt, and establishment of certain thresholds before the question can be resolved. 11 U.S.C. §§ 350(b), 541(a).

Defendants note that when they previously raised this issue, the Court held this argument was "speculative and premature because Defendants have not identified any actual putative class

7

member who has such a [bankruptcy] problem, and Plaintiff has not been permitted discovery into putative class members claims." Order Re Class Cert. (Doc. 250) at 12. Defendants contend they have since learned from documents filed in the GMACM/RFC state court settlement that borrowers on 31 of the 70 loans, or about 44% of the class, have filed for bankruptcy. Defendants suggest that a similar number of proposed class members in this case can be expected to have bankruptcy issues, since there is no reason to believe that the borrowers of second mortgage loans serviced by GMAC and RFC were any less likely to file for bankruptcy than the borrowers of second mortgage loans in this case whose loans were serviced by other entities. Thus, 44% of the proposed class here may lack standing to sue.

In reply, Plaintiff concedes that some class members may lack standing, but notes that many variables determine whether any given class member's claim would belong to a bankruptcy estate or survive a bankruptcy petition. Plaintiff rejects Defendant's 44% estimate as speculative, and suggests that the Court could cure any standing deficiency by substituting a trustee in place of a debtor class member.

The Court holds that the issue of whether certification is improper because some class members may have bankruptcy complications is no longer speculative or premature, it is ripe for determination. The Court finds that 44% is a reliable estimate of the percentage of loan borrowers in the proposed class who entered bankruptcy. Additionally, while all of these borrowers will not lack standing,[4] the Court finds most will lack standing. Thus, the question is

---

[4] The Court recognizes that just because a borrower filed for bankruptcy at some point does not mean his or her claim was actually extinguished in the bankruptcy proceeding. It is also possible that some borrowers filed their bankruptcy petitions before receiving their second mortgage loans and so would still have standing to sue. That said, the Court assumes that most borrowers who filed for bankruptcy did so after receiving their loans, since it is difficult to imagine any lender, even at the height of the lending boom, extending a second mortgage loan to a borrower who had recently filed a bankruptcy petition.

not whether a large number of putative class members lack standing, but does this fact foreclose class certification.

The Court holds it does. "Standing is . . . a threshold issue in every case before a federal court. If a plaintiff lacks standing, he or she cannot invoke the jurisdiction of the court." *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998). In the context of certifying class actions, the Eighth Circuit has recently and repeatedly held that "[a] district court may not certify a class . . . 'if it contains members who lack standing.'" *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010)).

Plaintiff does not dispute this, but argues the Court can cure any deficiencies by substituting a bankruptcy trustee for any class member who lacks standing. The two cases Plaintiff cites in support of this proposition, however, are not class actions. Plaintiff has not cited, and the Court cannot find, any authority holding that a federal court may certify a class where some members lack standing on the grounds that the court can later substitute a bankruptcy trustee for those class members.

On the contrary, the Court has found an analogous case in which the district court denied class certification. In *Gawry v. Countrywide Home Loans, Inc.*, the plaintiff sued a lender on behalf of a putative class of borrowers alleging that the lender violated state law by charging prepayment and refinancing penalties. 640 F. Supp. 2d 942, 948 (N.D. Ohio 2009). The lender asserted a standing defense against class members who filed for bankruptcy after obtaining their loans. *Id.* at 955. In denying class certification, the court noted that it would have to make individualized inquiries at trial into the specific details of each putative class members' bankruptcy proceedings to determine whether he or she had standing. *Id.* at 955-56. The Court

9

held this was enough to establish that common issues did not predominate over individual issues. *Id.* at 956

In the present case, the Court finds that whether it analyzes the issue in terms of class definition or predominance, a Rule 23(b) factor, the result is the same: The Court cannot certify the class. Plaintiff's proposed class definition includes numerous borrowers who lack standing, therefore the Court may not certify the class. Even if the governing caselaw permitted the Court to certify the proposed class, there is no way the Court could identify those members whose bankruptcy issues preclude them from having standing short of conducting an exhaustive inquiry into each individuals' bankruptcy proceeding, something the Court declines to do. Although the Court could refine the class definition to avoid an over-inclusive class, the Court sees no way to do so, nor has the Plaintiff suggested any alternative definition that would avoid this problem. Consequently, the Court sees no alternative but to deny certification.

### 3. The definition is overbroad because it includes individuals who obtained a loan prior to December 10, 2002.

Defendants also argue the proposed definition fails because it includes borrowers who merely made a payment of principal or interest on a loan after June 20, 2002, but whose loan was originated before that date. Defendants observe the Court ruled in its initial class certification order that the Plaintiff had conceded that no claims could be brought for loans originated before June 20, 2002, and so Plaintiff is estopped from arguing otherwise now. Defendants additionally suggest that because they were not named as Defendants until December 10, 2008, the class period should not begin until December 10, 2002.

In response, Plaintiff argues that because the Eighth Circuit held in *Washington v. Countrywide Home Loans, Inc.* that the collection of interest is an additional violation of the

10

MSMLA, he should not be barred from arguing that the statute of limitations should run from the date interest was last collected. Plaintiff is silent as to whether December 10, 2002, is the appropriate starting date for the class period.

The Court has reviewed the parties' briefing concerning class certification and the Court's initial class certification order and finds that both parties had a fair opportunity to litigate the statute of limitations question at that time and that Plaintiff conceded the limitations period should be six years. Although the *Washington* decision clarified the law, by the time it was issued, Plaintiff had already waived any argument he had that the statute of limitations should run from the last date interest was paid. The doctrine of judicial estoppel prevents him from relitigating this issue now. *Hossaini v. West. Mo. Med. Center*, 140 F.3d 1140, 1142-43 (8th Cir. 1998) (noting the doctrine prohibits a party from taking inconsistent positions in the same litigation). Finally, the Court notes that Plaintiff does not deny or address Defendants' argument that because GMACM and RFC have been dismissed from the litigation, the relevant starting date for the class period is the day the remaining Defendants, UBS and DBNTC, were sued. Consequently, this point is conceded. Accordingly, if any class were certified in this case, the applicable starting point for the class period would be December 10, 2002.

While the proposed class definition is overbroad because it includes individuals who obtained their loan prior to December 10, 2002, this defect by itself is not fatal to certification because the Court could refine the definition to restrict the class to individuals whose loans were made on or after December 10, 2002. However, because of the standing problems discussed above, amending the proposed definition would be futile.

11

### 4. The definition is not overbroad because it may encompass some borrowers who took out loans for business purposes.

Next, Defendants contend the class definition is overbroad because it includes loans made on residential real estate for businesses purposes, loans which are not governed by the MSMLA. Defendants argue that the purpose of each class members' loan cannot be determined without an individualized review, so a class should not be certified.

The Court considered and rejected this argument in its initial order on class certification, noting that almost all of the loans in the proposed class appear to have been made for the purchase of owner-occupied residences. The Court also held that to the extent any class members' loans were business loans, they could be identified via a routine and mechanical examination of the loan documents and not a highly individualized inquiry. This analysis is unchanged with respect to Plaintiff's latest proposed definition. Accordingly, there is no merit to Defendants' objection.

### 5. The definition is not overbroad because it may encompass some borrowers with piggyback loans that are exempt from the MSMLA.

Finally, Defendants assert the class definition is overbroad because it includes borrowers with "piggyback"[5] loans that are not covered by the MSMLA. The MSMLA does not apply to "any transaction in which a single extension of credit is allocated between a first lien and any number of subordinate liens." Mo. Rev. Stat. § 408.237. Defendants claim that, unlike Mayo, some putative class members received piggyback loans which were a single extension of credit

---

[5] A piggyback loan is a common financing option whereby two loans are made to the borrower to finance more than 80% of the purchase price of a home without paying private mortgage insurance. *See Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001). The first loan is typically made for 80% of the purchase price, and the second, or "piggyback" loan, is a second lien loan drawn to cover the down-payment requirement of the first loan. *See Espinoza v. Recontrust Co., N.A.*, No. 09-CV-1687-IEG (RBB), 2010 WL 1568551, at *1 n.1 (S.D. Cal. April 19, 2010).

12

by a single lender.  Defendants contend that sorting through the variation among the class members' loans to determine which are covered by the MSMLA will require such individualized inquiry that the Court should not certify the proposed class.

Plaintiff responds that the Court has already rejected the argument that a piggyback loan is exempt from the MSMLA.  Plaintiff also contends it is unclear how many, if any, putative class members' piggyback loans were originated with a single lender.

The Court notes it has not ruled that *all* piggyback loans are covered by the MSMLA, only that Plaintiff Mayo's was, thus Defendants cannot avoid liability on Mayo's second mortgage loan.  Summ. J. Order at 17.  Specifically, the Court found that Plaintiff purchased his home in a single transaction involving two separate extensions of credit.  *Id*.  Wells Fargo extended credit in the form of a 30-year, adjustable rate, first-lien mortgage loan for 80% of the purchase price; and Option One extended credit in the form of a 30-year, fixed rate (11.65%) second-lien mortgage loan for 20% of the purchase price.  *Id.* at 3-4.  The Option One loan ("the Loan") was the second mortgage loan, and it is at the center of this lawsuit.  In rejecting Defendants' claim that the Loan involved a single extension of credit, the Court held that two separate extensions of credit were evidenced by the fact that two separate lenders made separate loans with different terms, and that there were separate notes, separate deeds of trust, separate loan applications, separate loan underwriting processes, separate loan approvals, separate credit checks, and separate title policies.  *Id.* at 17.  The Court further observed there were separate wire transfers funding the loans; separate verification of income and employment; separate instructions to the closing agent; and notice to the first lien holder that there would be a second lien on the property.  *Id.*

13

That clarified, the Court holds that the existing record is insufficiently developed for the Court to determine whether the number of class members who have such piggyback loans is significant or involves such an individualized inquiry that it would preclude class certification. Since the Court has already held that the class is overbroad for other reasons, the Court need not rule on this argument.

**B.      The Court will not address whether the Rule 23(a) factors are satisfied.**

Because the Court's holding that the proposed class definition is fatally overbroad is dispositive, the Court need not address whether the Rule 23(a) factors are satisfied.

**Conclusion**

Finding that the proposed class definition is fatally overbroad, the Court holds Plaintiff has not carried his burden of defining an appropriate class. Accordingly, Plaintiff's Renewed Motion for Class Certification (Doc. 296) is DENIED.

Consistent with the Court's Third Amended Scheduling and Trial Order (Doc. 161), the Court orders the parties to confer and submit a join proposed revised scheduling order for the remaining issues in the case. The parties should submit their joint proposed revised scheduling order on or before October 5, 2012.

**IT IS SO ORDERED.**

DATE:  September 21, 2012                          /s/ Greg Kays
                                                                            GREG KAYS, JUDGE
                                                                            UNITED STATES DISTRICT COURT

14